## WISNER v. SCHOPP.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

ACCORD AND SATISFACTION—PART PAYMENT BY CHECK—CONDITIONS.

　　A consignor of onions, who accepted a check for the first shipment, marked, "In full payment on onions shipped Apr. 20th," and then notified the consignee that he would look to him for payment of the balance of the agreed price, and then accepted another check, for the actual proceeds of the entire sale, marked, "In full payment 2 cars onions, 13,173 and 30,335," and, in response to the consignee's letter disavowing responsibility for the loss, wrote that he held him for the balance, waived nonacceptance of the onions under a contract of sale.

Appeal from special term, Orange county.

Action by Ralph Wisner against Conrad Schopp. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

Henry Bacon, for appellant.
M. N. Kane, for respondent.

WILLARD BARTLETT, J. This is a controversy over three car loads of onions which were shipped by the plaintiff, as vendor, from Orange county, to the defendant, as vendee, at St. Louis. The defendant refused to accept the onions upon the ground that they did not conform, either in quality or condition, to the terms of the contract of purchase; and after some correspondence with the plaintiff, advising him of his refusal to take the goods, the defendant sold the onions in St. Louis, by plaintiff's direction, for his benefit and on his account. There is no dispute but that the proceeds of these sales were duly remitted to the plaintiff. The present suit does not concern those proceeds, but is brought to recover damages against the defendant on the ground that the onions, when they reached St. Louis, were in all respects what the plaintiff had agreed to deliver there, and that the defendant was not justified in refusing to accept them and pay for them. There was conflicting testimony as to the actual quality and condition of the onions, so that the question of whether they were properly rejected or not was a question for the jury.

　There is another feature of the case, however, which I think demanded the direction of a verdict in favor of the defendant. The proceeds of the sales made by the defendant in St. Louis, after he had informed the plaintiff of his rejection of the onions, were remitted to him in two checks. The first check was drawn on the German-American Bank of St. Louis, under date of May 1, 1894, and it directed that bank to pay to Ralph Wisner or order $251, "In full payment on onions shipped Apr. 20th." The plaintiff duly indorsed this check, and obtained the money thereon. The second check was drawn on the same institution, under date of May 29, 1895, and directed the bank to pay to the order of Ralph Wisner $319.03, "In full payment 2 cars onions, 13,173 and 30,335." The plaintiff in-

dorsed this check, "Accepted on account. Ralph Wisner," and duly collected the amount thereof. The plaintiff testifies that, upon receiving the first of these checks, he wrote to the defendant, telling him that he had received his check for $251, and would give him credit for that, and look to him for the balance, of $399. This balance would have been the amount due from the defendant if he had accepted the onions. The second check was accompanied by a letter from the defendant in reference to the two car loads of onions mentioned therein, in which he wrote: "We herewith inclose you sales and check for last two car onions. They no doubt will make you a loss, but you can only blame yourself, as such stock as this had no right to be shipped our way at all this late in the season, but should have been sold near by and quickly used up." Upon the receipt of this communication, the plaintiff wrote to the defendant that he had received his check for the two car loads of onions, given him credit therefor, and looked to him for the balance.

I think that the retention of these two checks, and the collection of the money thereon, under the circumstances, operated to relieve the defendant from any liability by reason of his rejection of the onions, whether that rejection was, in the first instance, justifiable or not. The learned trial judge instructed the jury in respect to this branch of the case as follows:

"But I say to you that if the defendant, Mr. Schopp, when he sent those checks, sent them to the plaintiff in full settlement and compromise of the claim for damages arising out of these transactions, as well as of the purchase price which the goods brought in St. Louis; in other words, if his intent was that he would sell the goods for whatever they would bring on account of the plaintiff, and pay him that in liquidation of the entire claim for damages and everything connected with them, and if the plaintiff so understood it, or should have understood it, from the letters which accompanied the checks, or from the surroundings of the transaction,—that then the checks, if used, were to be taken in full payment, and the plaintiff cannot recover anything, no matter if he did write the letters repudiating their acceptance as payments in full."

It would have been proper to leave this question to the jury, if there had been any substantial dispute in the testimony on the subject, or any evidence from which conflicting inferences of fact could reasonably be drawn; but there was no substantial dispute on the subject, and it seems to me that the proof warrants only one inference, and that is that the plaintiff did understand, or should have understood, from the checks themselves and the correspondence, that the checks were tendered only in satisfaction of any and all claims which the plaintiff might have on account of the action of the defendant in regard to the respective car loads of onions.

It is argued that, irrespective of any claim which the plaintiff had against the defendant for damages growing out of his rejection of the goods, the plaintiff was entitled to receive whatever the defendant had collected upon his sale of the onions on his account, after he had rejected them; and that the words "in full," used in the checks, may be understood as applying to the full payment of the proceeds of such sales. But the testimony of the plaintiff himself shows that such could not have been his understanding, and that he must have known that the defendant, in sending the checks,

in the form in which he did, intended to embrace and adjust every possible claim against him which could arise out of his transactions with the plaintiff relative to these onions.   Otherwise it is impossible to imagine why he should have taken the pains to write letters, stating, in substance, that he would keep the checks on account, and hold the defendant liable for the amount of the purchase price. It seems to me that the facts bring the case within the principle laid down in Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, and the cases there cited.   The position of the plaintiff here was that the defendant owed him upward of a thousand dollars more than was represented by the checks which he sent him.   Evidently apprehensive that the plaintiff would insist upon his claim for this amount, the defendant, in forwarding his checks for the sums which he conceded to be due, drew them in such a form as to call the plaintiff's attention to the fact that he intended them in satisfaction of his entire liability in the matter, and also transmitted with the second check a letter, from which I have quoted above, which made this intention still more manifest.   "Under these circumstances," as was said by the court of appeals in Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, "the acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction."

I think the judgment should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur.